UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| M.C., as Parent and Natural Guardian of Minor Plaintiff, R.N., | : : : | |
| v. | : : | CIVIL ACTION NO. 3:09-cv-1437 (VLB) |
| BENJAMIN SIGAL, M.D. AND MILIND KALE, M.D., Defendants. | : : : : | August 4, 2010 |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS [DOC. ## 33, 36]

This case was brought by M.C. as Parent and Natural Guardian of Minor Plaintiff, R.N,[1] against the Defendants, Dr. Benjamin Sigal and Dr. Milind Kale. The Plaintiff asserts a claim arising under 42 U.S.C. § 1983 against both Defendants for unlawful search of his person in violation of the Fourth Amendment. He also asserts state law claims against Defendant Sigal only for intentional infliction of emotional distress, reckless infliction of emotional distress, civil assault, civil battery, and invasion of privacy. Presently pending before the Court are separate motions to dismiss filed by Defendants Kale and Sigal. See Doc. ## 33, 36. For the reasons stated below, the motions to dismiss are GRANTED.

### I. Factual and Procedural Background

The Plaintiff's Amended Complaint alleges the following facts. On March 11, 2009, the Plaintiff was taken into custody by parole officers and Hartford Police

---

[1] By Order dated September 24, 2009, the Court granted the Plaintiff's Motion to Seal the unredacted version of the Complaint listing the actual names of the Plaintiff and his guardian, and permitted the Plaintiff and his guardian to use pseudonyms in publicly filed documents. See Doc. #7.

because of a parole violation and transported to the Connecticut Juvenile Training Center ("CJTS") where he was to be detained. The CJTS operates under the authority of the Connecticut Department of Children and Families, a Connecticut state agency. The police alleged that the Plaintiff refused to unclench his buttocks during a pat down search of the Plaintiff. The Plaintiff's parole officer, Martin Shafman, informed Dr. Milind Kale, a physician working at the CJTS, that the police suspected the Plaintiff may have something in his buttocks or anus.

Dr. Kale, or someone under his direction, granted oral authorization to Middlesex Hospital, located in Middletown, Connecticut, (the "hospital") to perform an x-ray and rectal examination on the Plaintiff. Dr. Benjamin Sigal is an emergency room physician at the hospital. Dr. Kale informed the hospital that the Plaintiff had stuffed drugs in his rectum and informed Dr. Sigal that the Plaintiff had ingested a foreign substance. At the direction of Dr. Sigal, the Plaintiff underwent an x-ray examination, which did not show a foreign body within the Plaintiff's abdomen. The Plaintiff was administered a bowel-cleansing medication used to evacuate the bowels. Dr. Sigal then conducted a rectal examination of the Plaintiff. No drugs, weapons, or other foreign bodies were discovered during the rectal exam and no evidence of rectal trauma was detected.

The Plaintiff filed suit in this Court on September 14, 2009 against Shafman, Kale, and Sigal. On October 21, 2009, Defendants Shafman and Kale moved to dismiss the original Complaint. On November 6, 2009, Defendant Sigal filed a Motion for More Definite Statement. In response, the Plaintiff filed a Motion to Amend the Complaint on November 19, 2009. The Motion to Amend was granted on

December 12, 2009. The Plaintiff filed an Amended Complaint on January 27, 2010. In the Amended Complaint, the Plaintiff removed Defendant Shafman as a party to this action. Defendant SIgal moved to dismiss the Amended Complaint on February 26, 2010. Defendant Kale moved to dismiss the Amended Complaint on March 3, 2010. The Defendants assert identical arguments in support of their respective motions.

## II. Discussion

### A. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. Hayden v Paterson, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (internal quotation marks omitted).

### B. 42 U.S.C. § 1983 Claim (First Cause of Action)

#### 1. Fourth Amendment Claim

The Defendants first argue that the Plaintiff's 42 U.S.C. § 1983 claim should be dismissed because the Plaintiff has alleged a medical malpractice claim rather than a plausible violation of his constitutional right against unreasonable searches under the Fourth Amendment. Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws. See K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health, 189 F.3d 273, 280 (2d Cir. 1999). In order to seek redress under § 1983, a plaintiff must assert a violation of a federal right. Id. The Fourth Amendment protects individuals against unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979). The test of reasonableness under the Fourth Amendment requires balancing the need for the particular search with the invasion of personal rights that the search entails. Id. at 559. Further, the reasonableness of a search is assessed in light of all circumstances surrounding the search and the nature of the search itself. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985).

The Defendants' attempt to recast the Plaintiff's constitutional claim as a tort claim is unavailing. Connecticut courts have ruled on several cases in which ordinary tort and breach of contract claims, pleaded individually by the plaintiff, have been determined to sound in medical malpractice when taken together. In Connecticut, "the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants were sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to the medical diagnosis or treatment and involved the exercise of medical judgment." Gold v. Greenwich Hosp. Assn., 811 A.2d 1266, 1270 (Conn. 2002). In Gold, the plaintiff sued a private hospital and associated caregivers for negligence because she was assaulted by a former patient of the hospital, whom she believed was prematurely released. The Connecticut Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendants, holding that the plaintiff's complaint was properly characterized as asserting a medical malpractice claim rather than a negligence claim. Id. at 1270-71.

The Defendants also rely on Votre v. County Obstetrics and Gynecology Group, P.C., 966 A.2d 813, 815 (Conn. App. Ct. 2009), in which the plaintiff alleged separate counts of negligent, reckless, and intentional infliction of emotional distress, misrepresentation, and breach of contract against a group of physicians arising out of the defendant's care of the plaintiff during her pregnancy. The Court held that the whole of the plaintiff's complaint was properly characterized as a medical malpractice claim because the factual allegations in each count of the

complaint required proof of medical negligence in light of the applicable standard of care and satisfied the Gold medical malpractice criteria. Id. at 815, 820; see also Bruno v. Guelakis, 41 Conn. L. Rptr. 695 (Conn. Super. Ct. 2006) (holding plaintiff's individually pleaded counts of ordinary negligence, assault and battery, failure to obtain consent, and negligent infliction of emotion distress against a private party to be part of a medical malpractice claim). None of the cases cited by the Defendants involved state action and none asserted deprivation of a constitutional right as does the Amended Complaint in this case. The Plaintiff has asserted a valid constitutional claim, which the Defendants cannot recast as a malpractice claim on the basis of the authority upon which they rely.

However, the Defendants more persuasively argue that the Plaintiff's allegations fail to establish that they violated the Fourth Amendment because the allegations do not demonstrate that the Defendants acted unreasonably given their duty to provide for the well-being of the Plaintiff and the purpose of the CJTS. The appropriate standard to apply in this case is complicated by the fact that the CJTS is both a residential school and a penal institution, and different reasonableness standards apply in school as opposed to penological settings. Nevertheless, applying either standard, the alleged intrusion was not a clear violation of the Plaintiff's constitutional rights.

The Court begins with an analysis of the reasonableness standard applicable to the school setting. "The Fourth Amendment 'right of people to be secure in their persons . . . against unreasonable searches and seizures' generally requires a law enforcement officer to have probable cause for conducting a search." Safford

Unified Sch. Dist. v. Redding, 129 S.Ct. 2633, 2639 (2009). "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed," Brinegar v. United States, 338 U.S. 160, 175-176 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)), and that evidence bearing on that offense will be found in the place to be searched. Redding, 129 S.Ct. at 2639.

In New Jersey v. T.L.O., 469 U.S. 325 (1985), the United States Supreme Court recognized that the school setting "[r]equires some modification of the level of suspicion of illicit activity needed to justify a search," id. at 340, and held that for searches by school officials "[a] careful balancing of government and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause . . . ." Id. at 341. The Court applied a standard of reasonable suspicion to determine the legality of a school administrator's search of a student and held that a school search "[w]ill be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342.

Notions of probable cause are "[f]luid concepts that take their substantive content from the particular contexts" in which they are being assessed. Ornelas v. United States, 517 U.S. 690, 696 (1996). "[T]he required knowledge component of probable cause for a law enforcement officer's evidence search is that it raises a 'fair probability,' or a 'substantial chance,' of discovering evidence of criminal

activity." Redding, 129 S.Ct. at 2639. The lesser standard for school searches could readily be described as a moderate chance of finding evidence of wrongdoing. Id. The search, as actually conducted, must be "[r]easonably related in scope to the circumstances which justified the inference [of wrongdoing] in the first place." T.L.O., 469 U.S. at 341. In this case, the Plaintiff was a fourteen year old male suspected of secreting in his body a substance which could be injurious, a consequence which the CJTS has a duty to prevent. Thus, this Court finds that the degree of the alleged intrusion matched the intruders' duty as caretakers.

The Plaintiff's claim also fails under the reasonableness standard applicable to the penological setting. A prison regulation is valid if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Second Circuit has upheld random body cavity searches of prison inmates as reasonably related to legitimate penological interests. See Covino v. Patrissi, 967 F.3d 73, 79 (2d Cir. 1992); see also Hurley v. Ward, 584 F.2d 609, 612 (2d Cir. 1978). However, strip searches of those arrested for misdemeanors require reasonable suspicion of possession of contraband. N.G. v. Connecticut, 382 F.3d 225, 234 (2d Cir. 2004) (citing Shain v. Ellison, 273 F.3d 56, 62-66 (2d Cir. 2001)). In N.G., 382 F.3d at 230, 236-37, the Second Circuit applied the "special needs" standard set forth in Board of Education v. Earls, 536 U.S. 822, 829 (2002) to assess the reasonableness of repeated strip searches of two female juvenile detainees at Connecticut juvenile detention centers. The "special needs" standard of Earl permits searches unsupported by probable cause in the context of safety or administrative regulations, when "special needs, beyond the normal need for law enforcement,

make the warrant and probable-cause requirement impracticable." 536 U.S. at 829. The Court held the initial searches of the juveniles, upon their entrance into the detention facilities, to be reasonable in light of the State's purpose of protecting children from harm inflicted by themselves and of protecting the juvenile institution, but required a reasonable suspicion of secreted contraband for subsequent searches to be performed. N.G., 382 F.3d at 237-38.

Furthermore, the Government is required to provide medical care to persons over whom they have custody. See DeShaney v. Winnebago Cnty. Dep't of Soc. Serv., 489 U.S. 189, 198-99 (1989). The State has an affirmative duty to act on behalf of a person whose ability to do so is impaired by virtue of being in custody. Id. at 199-200. A governmental agent may violate a detainee's due process rights afforded under the Fourteenth Amendment by its deliberate indifference to the detainee's well-being which may be established by showing an absence of reasonable care. Benjamin v. Fraser, 343 F.3d 35, 50 (2d Cir. 2003). State actors may also be liable under § 1983 if they enhance the danger of injury caused by the conduct of a private actor. Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir. 2009).

The search of the Plaintiff in this case is substantially similar to the searches conducted in N.G., as it was conducted on a juvenile prior to his entry into a Connecticut juvenile detention center. Just as the State in N.G. had a duty to protect the juvenile plaintiffs from harm inflicted by themselves as well as to protect the safety of the juvenile institution, the Defendants in this case had the same obligation to prevent the Plaintiff from injuring himself with the suspected secreted

9

substance and to protect the safety of the CJTS. Further, the initial entrance searches in <u>N.G.</u> were upheld even without an individualized suspicion that the juveniles were withholding contraband. In this case, the Plaintiff's alleged furtive behavior provided a reasonable basis for such a suspicion, which supports the reasonableness of the Defendants' actions. The Plaintiff's conclusory allegations that the Defendants lacked a reasonable basis for conducting the search is not only insufficient under the <u>Iqbal</u> pleading standard, it is directly contradicted by the Plaintiff's own allegation that the police communicated to the Defendants their suspicion that the Plaintiff may have had something in his buttocks. Moreover, the failure to conduct diagnostic tests to remove suspected injurious material from the Plaintiff's person while he was in custody could have itself constituted a deprivation of his constitutional rights. <u>See</u> <u>Benjamin</u>, 343 F.3d at 50. Therefore, based upon a careful balancing of the government's interest in discharging its duty to assure the safety of persons in its custody against the Plaintiff's constitutional rights, the Court holds that the facts alleged in the Amended Complaint are not sufficiently specific and plausible to establish a claim for deprivation of the Plaintiff's Fourth Amendment right to be free from unreasonable search.

### 2. <u>Qualified Immunity</u>

The Defendants also argue that they are entitled to qualified immunity from the Plaintiff's 42 U.S.C. § 1983 claim because they were sued as agents of the State of Connecticut. The doctrine of qualified immunity shields government officials performing a discretionary function "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  Harlow v. Fitzerald, 457 U.S. 800, 818 (1982).  In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right.  Id. at 201.  Second, if the plaintiff satisfies the first step, the court must then decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Id.

Subsequently, in Pearson v. Callahan, 129 S. Ct. 808 (2009), the Supreme Court ruled that the Saucier approach for determining whether a government official is entitled to qualified immunity should no longer be considered mandatory. Following Pearson, lower court judges are permitted to exercise their discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.  Id. at 817.  The Pearson Court observed, however, that the Saucier approach is often beneficial, such as in cases where it "may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be."  Id. at 818.

The Second Circuit has considered the following three factors in determining whether a particular right was clearly established:  "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful."  Jermosen v. Smith, 945

F.2d 547, 550 (2d Cir. 1991); see also Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). When considering a qualified immunity defense, a court must determine whether the right at issue was clearly established "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Defendant Kale was sued in his capacity as an employee of the CJTS, which operates under the authority of the Connecticut Department of Children and Families, a Connecticut state agency. Therefore, Kale clearly falls within the definition of a state official for purposes of the qualified immunity analysis. Although Defendant Sigal is an employee of Middlesex Hospital, a private institution, he was sued as an agent of the state of Connecticut. Because Sigal's status as a state agent is uncontested by the parties, the Court can assume that he was acting with the authority of a state official for purposes of assessing his entitlement to qualified immunity.

A person has an unquestionable right against unreasonable search and seizure afforded by the Fourth Amendment of the United States Constitution. However, in this case, that right must be balanced against the State's duty to assure the safety of a person in custody. Balancing these competing interests often requires an exercise of discretion. In light of the specific context of this case where

the Plaintiff's alleged conduct was furtive and evinced consciousness of guilt, the conduct by the Defendants, as the medical caregivers of the Plaintiff, was not clearly erroneous. The Plaintiff's alleged failure to unclench his buttocks during a routine pat down search led the police and the Plaintiff's parole officer to infer the possibility that the Plaintiff had a foreign, potentially injurious substance in his body. Upon receipt of this information, the Defendants had a duty as state officials to provide for the well-being of the Plaintiff, a juvenile in state custody, which in this case required an intrusion upon the Plaintiff's body to ensure he was not endangered by a foreign substance. Although the Plaintiff had a clearly established Fourth Amendment right against unreasonable search and seizure, it is not sufficiently clear that a reasonable official in the same position as the Defendants would have understood their conduct to be a violation of this right. Therefore, even if the Plaintiff had adequately pleaded a plausible 42 U.S.C. § 1983 claim for deprivation of his Fourth Amendment rights, the Defendants in this case would be entitled to qualified immunity.

### C. State Law Claims (Remaining Causes of Action)

Having dismissed the Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). See Valencia ex rel Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting Carnegie-Mellon Univ. v.

**Cohill**, 484 U.S. 343, 350 n.7 (1988)); **Marcus v. AT&T Corp.**, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, these claims are dismissed without prejudice to refiling in Connecticut Superior Court.

### III. CONCLUSION

Based on the above reasoning, the Defendants' motions to dismiss [Doc. ## 33, 36] are GRANTED. The Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983 are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims, and therefore these claims are dismissed without prejudice to refiling in Connecticut Superior Court. The Clerk is directed to close this case.

                                IT IS SO ORDERED.

                                /s/
                            Vanessa L. Bryant
                            United States District Judge

Dated at Hartford Connecticut: August 4, 2010.